MAINE SUPREME JUDICIAL COURT    Reporter of Decisions
Decision:  2019 ME 22
Docket:   Wal-18-314
Submitted
 On Briefs: January 17, 2019
Decided:  February 12, 2019

Panel:   ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

ADOPTION OF IVAN M.

PER CURIAM

[¶1]  The father and mother of I.M. appeal from a judgment entered by the Waldo County Probate Court (*Longley, J.*) terminating their parental rights in anticipation of an adoption pursuant to 18-A M.R.S. § 9-204(a)-(b) (2017)[1] and 22 M.R.S. § 4055(1)(A)(2), (B)(2)(a), and (B)(2)(b)(ii) (2017).  Both parents contend that there was insufficient evidence to support the Probate Court's findings that they are parentally unfit and that termination of their parental rights is in the best interest of the child.  Additionally, the father asserts that the Probate Court abused its discretion by failing to clearly rule on an objection raised during the hearing on the petition for termination of parental rights.  Discerning no error or abuse of discretion, we affirm the judgment.

---

[1]  The Maine Probate Code, codified in Title 18-A, will be revised and recodified in Title 18-C effective July 1, 2019. *See* P.L. 2017, ch. 402.

## I. BACKGROUND

[¶2]  The present appeal arises from petitions to terminate the mother's and father's parental rights and a petition for adoption brought by the maternal grandparents of the child in the Waldo County Probate Court.  The maternal grandparents, who are the child's limited co-guardians, sought to terminate the parental rights of the child's mother and father in order to adopt the child.  A two-day hearing was held on the maternal grandparents' petitions on May 8 and 21, 2017.  The following facts derive from the Probate Court's judgment terminating the mother and father's parental rights, and are supported by competent record evidence admitted over the course of a two-day hearing.

[¶3]  In its order terminating parental rights, the Probate Court made the following factual findings of parental unfitness with regard to the father:

> In addition to repeated domestic violence aimed at the mother, [the father] has had a long and ongoing history with anger issues and emotional instability. . . .  Though he occasionally can present as . . . calm and polite, he has often shown himself to be very easily provoked into a rage, rant and/or violence.
>
>    . . . Starting 2 years ago, he has ignored his child and his visitation opportunities with [the child].  Instead, [the father] has made excuses.  Regardless of repeated and ongoing visit opportunities, what visits he has sought, he often has left early or remained in the car outside the child's home.  He also has canceled multiple visits.  He has added that this child "can

overwhelm" him, that the [maternal grandparents'] "control" has him feeling "attacked" by the [maternal grandparents], adding "I don't like to be around them."  And he was not able to remember the last time he was with his child.  In short, [the father] has had a visitation routine with his child . . . that has gone from the infrequent and sporadic to the non-existent.

Now living in the home of a friend, he has decided to ignore his child's life-long home and attachments along with [the child's] special needs and have [the child] in his own care.  Specifically, [the father] has stated, "if I had this child, I would not let the guardians in [the child's] life."

In short, [the father] . . . has continued to lack the ability or willingness to take responsibility for this child in a time-frame reasonably calculated to meet this . . . child's now immediate needs and wishes for permanency.

[¶4]  In its decision terminating parental rights, the Probate Court made

the following factual findings of parental unfitness with regard to the mother:

[The mother] has admitted that she has no bond with the child in this court's proceedings.  In her words, she "never had one."  She also has admitted that the child is doing very well in the [maternal grandparents'] primary care.  She has added that, with them, [the child] has a routine and a strong bond. . . .  [S]he has chosen to reduce her visits to a mere 2-3 family gatherings this year . . . .

. . . .

. . . Beyond a few cards and gifts, [the mother] has failed to support this child financially.

. . . .

. . . In her request [to] have this child in her care, she casually, if not summarily . . . has dismissed this child's lifelong

home with and primary attachment to his primary caregivers. She also has ignored [the child's] special needs for routine and predictability.

In short, [the mother] has continued to lack the ability or willingness to take responsibility for this child in a time-frame reasonably calculated to meet this . . . child's now immediate needs and wishes for permanency.

[¶5]   Based on its findings, the Probate Court came to the following conclusion:

Carefully having considered the needs of this child, the child's age and relationship with the [mother and father] and with the [maternal grandparents], and the amount of time spent with each of the parties and the child's proven ability to integrate into the home of the [maternal grandparents], termination is in the best interest of the child.

In sum, and based on the most credible evidence presented in these proceedings, the [maternal grandparents have] clearly and convincingly proven that the [mother and father] have been unwilling or unable to take responsibility for the child in a time frame reasonably calculated to meet the child's needs.

[¶6]   The mother and father timely appealed the Probate Court's judgment.  *See* 18-A M.R.S. § 9-309 (2017); M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

A.   Evidentiary Challenge

[¶7]   The father contends that the Probate Court erred by not ruling clearly on an objection to the maternal grandmother's use of prepared notes

while she was providing testimony to the court. Contrary to the father's argument, the record demonstrates that, *when an objection was raised* to the maternal grandmother reading from her notes, the Probate Court either required the attorney to use the proper method of refreshing a witness's recollection or sustained the objection. The father does not demonstrate, and the record does not reveal, any error in the Probate Court's handling of the objections that were raised and the manner of the maternal grandmother's testimony. *See State v. Hamel*, 2007 ME 18, ¶¶ 3-4, 913 A.2d 1287; *State v. Liberty*, 498 A.2d 257, 259 (Me. 1985). Therefore, the father is not entitled to any relief on this evidentiary challenge.

B.    Sufficiency of the Evidence

[¶8]  The mother and father contend that the evidence is insufficient to establish parental unfitness by clear and convincing evidence.[2]

> Our review of parental rights termination cases is limited, and we will affirm a judgment on appeal if any evidence in the record can rationally be read to establish as highly probable the court's factual conclusion that [the parents are] unwilling or unable to take responsibility for the child within a time to meet [the child's] needs.

---

[2]  The mother also challenges the Probate Court's finding that termination of her parental rights is in the best interest of the child. Contrary to the mother's contentions, there is a wealth of evidence in the record to support the Probate Court's determination that termination of her parental rights is in the best interest of the child.

6

*In re Kenneth H.*, 1997 ME 48, ¶ 5, 690 A.2d 984 (alterations omitted) (quotation marks omitted). Despite the parents' assertions, there is competent evidence in the record to establish as highly probable that both parents are unable to take responsibility for the child within a time reasonably calculated to meet the child's needs. *See Adoption of Shayleigh S.*, 2018 ME 165, ¶ 16, --- A.3d ---. Consequently, the court did not err in its findings of parental unfitness.

[¶9] In conclusion, neither the parents nor the record demonstrates any error or abuse of discretion, and we therefore affirm the judgment terminating the mother's and father's parental rights.

The entry is:

Judgment affirmed.

---

Natasha C. Irving, Esq., Waldoboro, for appellant father

Christina B. Perkins, Esq., Ellsworth, for appellant mother

Joseph W. Baiungo, Esq., Belfast, for appellees maternal grandparents

Waldo County Probate Court docket number A-2017-1501-2
For Clerk Reference Only